FARMERS' MUTUAL INSURANCE COMPANY OF NEBRASKA V.
PHŒNIX INSURANCE COMPANY OF BROOKLYN, NEW
YORK.*

FILED JUNE 4, 1902. No. 11,889.

Commissioner's opinion, Department No. 1.

1. Insurance: POLICY: REQUEST FOR CANCELATION: UNEARNED PRE-
MIUM. A request for cancelation of an insurance policy, and
claim of unearned premium, takes effect from the time of its
receipt by the insurer, with tender of the policy.

2. New Insurance: FINDING. When trial court's finding that new in-
surance was taken out, and was in effect, before presentation
of first insurance policy for cancelation, is supported by suffi-
cient evidence, and the first policy contained a clause avoiding
it in case of additional insurance, judgment of the trial court
against any recovery of unearned premiums will be sustained.

ERROR from the district court for Lancaster county.
Tried below before HOLMES, J. Affirmed.

Burkett & Greenlee and Edwin M. Coffin, for plaintiff
in error.

Brome & Burnett and Thomas J. Doyle, contra.

HASTINGS, C.

This is an action upon 222 insurance policies, to recover
unearned premiums, which are claimed to be due under
section 42 of chapter 43 of the Compiled Statutes of Ne-
braska, providing for the cancelation of insurance policies,
and repayment of unearned premiums. It is sought to
distinguish these cases from that of *Farmers' Mutual Ins.
Co. v. Home Fire Ins. Co.*, 54 Nebr., 740, in that it is
claimed in the present case the right to the unearned pre-
miums accrued and was assigned to plaintiff before the
issuance of any new policies of insurance. Counsel hardly
claim that the finding by the trial court, that new insur-
ance was taken out before the cancelation of these policies

*Rehearing allowed. Judgment below reversed. See opinion, page
17, *post*.

in question, or their presentation for cancelation to the company issuing them, is unsupported by the evidence. Plaintiff's claim in this respect is as follows:

"There is some evidence in the record, and the stipulation of facts also throws some light upon the question, as to when these new policies were issued, with reference to the day the old policies were forwarded by the home office of the Farmers' Company to Brooklyn, but in our view of the case, these things are immaterial. We hold that whether or not these policies were valid for the purpose of cancelation and collecting the return premium thereon, depends entirely upon the question whether or not they were valid policies of insurance at the time the assured signed the request for cancelation, and delivered it with his old policy to the agent of the mutual company, with the evident purpose and intention that he should transmit them to Brooklyn, and that they should no longer be considered in force."

The contention of plaintiff is that the policies were in full force when it received them from the persons assured, together with requests for their cancelation, directed to the defendant, and assignments of the claim for unearned premiums. Plaintiff asserts that it is entirely immaterial at what time after that new insurance was taken out on the same property by the applicant for cancelation. Defendant, on the other hand, says that these policies, by their terms and the usage of insurers, would be in full force and effect until received for cancelation by the defendant, and if, in the meantime, other insurance had been taken out covering the same property, on behalf of the same assured, these policies would become, by their terms, unenforceable for any purpose, including collection of unearned premiums. In support of this it cites *Farmers' Mutual Ins. Co. v. Home Fire Ins. Co., supra.* The trial court found that there had been such new insurance; that it invalidated these policies; and unearned premiums could not be collected. It is conceded, as we have seen, that there is evidence to support the trial court's finding

of fact. Indeed, there can be very little question but that new insurance was taken out before the actual presentation of the old policies for cancelation. It i⌐ conceded that double insurance invalidates the policies for the purpose of collecting the unearned premiums. It only remains to be determined when the request for cancelation became effective, and the right to unearned premiums so absolute that new insurance could not do away with it. There seems no question that this would be when the old policies were delivered up for cancelation, and so put beyond the further control of the insured. So long as he could, by simply recalling, reinstate them and collect for loss that happened in the meantime, they were not canceled, and no return premium was due. *Crown Point Iron Co. v. Ætna Ins. Co.,* 127 N. Y., 608; *Colby v. Ins. Co.,* 24 N. W. Rep. [Ia.], 54. In the latter case, under a slightly different form of assignment, and circumstances substantially like those under consideration, the court held that the cancelation does not take place until a request for it is made. So long as these policies remained under the control of the several persons assured, or their agent or assignee, they certainly were not canceled. Until they were presented for cancelation, defendant's liability upon them remained. If, as the trial court found, there was other insurance on the same property during that time, no liability would attach to the defendant for unearned premiums, either to the original holders of the policies or to the plaintiff. The case differs from that of *State Ins. Co. v. Farmers' Mutual Ins. Co.,* 65 Nebr., 34, lately decided, in that the trial court in the latter case found against the contention that there was double insurance. The evidence in that case failed to show that the new policies took effect before the request for cancelation of the old ones. The opposite finding was made in the present case, and is admittedly supported by evidence, and seems to be fatal to plaintiff's right of recovery. As between the plaintiff and the several parties insured, doubtless a different rule would prevail. Unquestionably, the

undertaking on plaintiff's part to procure cancelation of original insurance, and its understanding of the circumstances, would deprive it of any right to claim forfeiture because of the pre-existing insurance. The intention for its cancelation would be sufficient as between the parties to such intention, as is held in the case cited by plaintiff, *Continental Ins. Co. v. Horton*, 28 Mich., 173.

It is recommended that the judgment of the district court be affirmed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

May 20, 1903, the following opinion was filed on rehearing:

1. **Stare Decisis.** The rule of law announced in the first paragraph of the syllabus in *Farmers' Mutual Ins. Co. v. Phœnix Ins. Co.*, 65 Nebr., 14, reaffirmed and adhered to.

2. **Unearned Premiums.** In an action to recover unearned premiums upon many insurance policies, brought under section 42, chapter 43, Compiled Statutes, the evidence disclosed that as to some of the policies, request for cancelation and repayment of unearned premium was made upon and received by the insurer before new insurance was taken out. *Held*, That a judgment denying recovery of unearned premiums as to such policies was not sustained by the evidence.

3. **Former Decision Vacated.** Decision on former hearing vacated.

KIRKPATRICK, C.

This case has been once before heard in this court, the former opinion being found in 65 Nebr., 14. In the consideration of the case at that time, it was taken for granted, because apparently so regarded by counsel, that the policies, unearned premiums upon which were sought to be recovered, were all delivered and took effect before the request for cancelation of the prior insurance was presented to the defendant in error. Upon a more careful

9

examination of the evidence upon the application for rehearing, it was disclosed that as to a portion of the policies in controversy a request for the cancelation of the existing policies had been presented to defendant in error prior to the execution and delivery of the new policies, and a rehearing has accordingly been granted, the cause being here for further consideration. A careful examination of the evidence, together with the agreed statement of facts upon which the case was determined in the trial court, discloses that, in many of the causes of action mentioned in the petition, a request for the cancelation of the existing insurance was presented to defendant in error at its home office in Chicago some days prior to any action having been taken on the application for new insurance, and prior to the issuance of any insurance policy thereon. In such case, there can be no doubt, under the authority of *State Ins. Co. v. Farmers Mutual Ins. Co.,* 65 Nebr., 34, that plaintiff in error would be entitled to recover. With the first paragraph of the syllabus of the former opinion we are well content, and adhere thereto. The petition of plaintiff in error in the trial court sets up more than one hundred causes of action arising under as many different policies. Having determined that under the evidence plaintiff is entitled to recover in all cases where a request for cancelation was presented to defendant in error before any additional insurance took effect, this court will not enter into an accounting to determine upon which particular causes of action plaintiff in error is entitled to recover, but will leave that for the determination of the trial court. It is therefore recommended that the judgment of the trial court be reversed, and the cause remanded for further proceedings.

HASTINGS, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the decision heretofore rendered is vacated and

the judgment of the trial court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

NOTE.—*Reinsurance.—Bordereaux.*

STATE OF NEBRASKA,
BUREAU OF INSURANCE. } *In re* ROYAL INSURANCE COMPANY.

A written question submitted to this department reads as follows:

"Referring to the new insurance laws in force July 1, 1899, I beg leave to ask your consideration and ruling, as follows:

"Section 100, H. R. 191 (see page 39 of Nebraska Insurance Laws), properly describes the various forms of reinsurance contracts in use, as: policy, entry, bordereau, of agreement, while section 1 of H. R. 187 (see page 41), in specifying the manner in which fire insurance shall be written, only mentions the word 'policy,' 'which shall be regularly issued and duly signed by its legally authorized agent, resident within the county or state where such property insured, or to be insured, is situated, such agent having been duly licensed by the state insurance commissioner.'

"When insurance on property in Nebraska is written by one of the Royal Insurance Company's legally authorized agents in the state, and is a larger line than the company desires to carry net, it is the custom of this company to reinsure or cede part of the risk to a company authorized to transact business in this state, which transaction is effected by a bordereau made up once each week and sent to the reinsuring company instead of a policy in form, which is usually issued to the public.

"Now if this bordereau is made up each week at the Chicago office of this company, and mailed to be regularly issued and duly signed by a legally authorized agent, resident in Nebraska, where the property insured or to be insured is situated, to reinsure and cede a part of such risk to the company duly authorized to transact business in this state, as required by section 98 of H. R. 191 (see page 38), will such bordereau be held and considered by your department as a 'policy,' and complying with the laws of this state?

"As a policy of insurance is a contract or agreement, and as the bordereau mentioned is the only evidence of liability or contract which passes between the insurance companies, ceding and reinsuring the risk in question, we consequently believe that the issue of the bordereau as stated fully complies with the intent and purpose of the law."

This question reduced to its substance is: Does the word "policy," as used in section 1 of House Roll 187, include "bordereau"?

The word "policy" is derived from a French word which means a promise. Winfield, Adjudged Words and Phrases, p. 469.

A policy of insurance is a commercial contract, based on the uses and customs of trade, expressed in a brief and inartificial form, and in some of its parts in peculiar and technical language, containing numerous stipulations, some of which are comprehended in a few short phrases, and others which arise solely by implication, and are not obvious on the face of the instrument. *Greene v. Pacific Mutual Ins. Co.*, 9 Allen [Mass.], 219.

"Bordereau" is a word borrowed from French mercantile law. It means, primarily, a memorandum. In the usage of merchants, it is:

A note enumerating the purchases and sales which may have been made by a broker or stock-broker. This name is also given to the statement given to a banker with bills for discount or coupons to receive. Black, Law Dictionary, p. 147.

In the sense in which you use it, and in which it is generally used by insurance men, it means a list, schedule or memorandum of risks which one company assumes from or reinsures to another company, which assumed the primary risks.

From the foregoing definitions, and from the well-known principle that the law reads into a contract whatever the received law itself, or established custom, puts there, this department is of the opinion that a bordereau of the kind described as used among insurance men, however meagre its terms, comes within the definition of "policy" as used in House Roll 187; and it will be so held.

WILBUR F. BRYANT,
*Deputy Insurance Commissioner.*

Executive Department, July, 1899.