# FIDELITY MUT. LIFE INS. CO. v. MER-CHANTS' & MECHANICS' BANK et al.

## No. 7227.

Circuit Court of Appeals, Fifth Circuit.
June 23, 1934.

Rehearing Denied July 23, 1934.

C. Baxter Jones and A. O. B. Sparks, both of Macon, Ga., for appellant.

Orville A. Park and Harry S. Strozier, both of Macon, Ga., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

On removal to the federal court the case was repleaded so as to stand as a suit by Merchants' & Mechanics' Bank against Fidelity Mutual Life Insurance Company to recover the face value of a policy on the life of one Hawkes which had been absolutely assigned to the bank with the company's consent. The defense was that the policy had, pursuant to an option in it, been surrendered by the bank on December 26, 1930, the day before Hawkes

died, and that only the cash surrender value was due, which was tendered. Jury having been waived by written stipulation, the court on an agreed statement of the facts gave judgment for the bank, and the insurance company appeals. The seventh annual premium fell due September 29, 1930, and was not paid. The policy provided: "After three years premiums shall have been paid, the insured or assigns at any time within three months after any default in premium, but not later, may surrender this policy (a) for its cash surrender value less any indebtedness to the Company hereon, or (b) for participating paid up insurance. * * * If the policy be not surrendered as above the insurance shall be automatically continued, etc." If not surrendered, this policy was in force at Hawkes' death. On December 8, 1930, a member of the law department of the company, whose authority in the matter does not appear, wrote the attorneys for the bank a letter in which attention was called to the nonpayment of this premium and that the policy might be surrendered within three months from the lapse. In reply, the bank's attorneys asked what the surrender value would be, and were informed in turn of the amount. On December 26th one of the bank's attorneys delivered the policy to Brown Nicholson in Macon, Ga., who represented the insurance company to an extent discussed below, with a request that the company pay the cash surrender value, and on the same day the attorney mailed at Macon a letter addressed to the company at Philadelphia stating: "We have today delivered this policy to your branch office at Macon, in charge of Mr. Brown Nicholson, for the purpose of obtaining its cash surrender value." On the same day Nicholson sent the policy by mail to the company at Philadelphia with a letter which said: "I am enclosing the above policy which the Merchants & Mechanics Bank wishes to surrender for cash. Please forward the necessary form just as soon as possible. You will note that sixty days (sic) since the lapse of this policy will be up on Dec. 29th." While these letters were in the mail on December 27, 1930, Hawkes suddenly died. Nicholson of his own motion on that day telegraphed the company: "Stop surrender procedure Theron Wallace Hawkes. Hawkes dead. Forward papers." The telegram was delivered that day. The bank's attorney the same day delivered a letter to Nicholson revoking the action of the day before, and asking a return of the policy. The letters written to the company on December 26th were received by it on Monday, December 29th.

The right of the bank as assignee to surrender the policy by December 29th for cash measured by its surrender value was an absolute option dependent only on the bank's will and act, and not requiring any consent on the part of the insurance company. The quoted provision of the policy was a continuing offer on the company's part kept open for a sufficient consideration and requiring only the acceptance of the bank by its making the election to take the cash surrender value. The effect of such election would be to change the liability of the company from one to pay the face of the policy according to its conditions on the death of the insured into a present absolute liability to pay the lesser surrender value. We do not think that the expression "surrender this policy" makes the physical delivery over to the company of the policy a prerequisite to or always a necessary part of this change of obligation. The policy might at the critical time be inaccessible, mislaid, or destroyed. If, as we are about to hold, the transaction must be with the company, it might be that there was not time to transport the policy physically to it or an authorized agent. A fair reading of the words of the policy would be that the surrender of the policy, so far as the physical delivery of it is meant, is to be concurrent with the payment of the cash and not precedent to it. Until the cash is paid, the bank should be entitled, if it insists, to retain custody of the instrument which evidences its right to have the surrender value, just as, when that value is paid, the company ought to receive the instrument which it has discharged. A similar question has arisen where under a statute or a provision of the policy the policy may be canceled and premium liability stopped or unearned premium recovered. Though the word "canceled" would imply a physical act done to the policy, the decisions are that an unequivocal request for cancellation which reaches the company or some one authorized to represent it is generally sufficient without a physical delivery up of the policy. Stevenson v. Sun Insurance Office, 17 Cal. App. 280, 119 P. 529; Crown Point Iron Co. v. Ætna Insurance Co., 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147; Home Insurance Co. v. Loflin, 41 Ga. App. 423, 153 S. E. 229; 32 C. J. Insurance, § 454. So holding in this case, we must look both to what was done with the policy and to the communications made concerning it.

The option to take the surrender value was not closed by the bank's attorney's mental decision, nor by his putting it into writing, nor by merely mailing the letter or the policy

. . .

to the company. The bank's acceptance of the continuing offer of the company made in the policy to pay the surrender value must have been communicated to the company. It could not otherwise know its outstanding risks. One of the offered options was to take a paid-up policy, which would require action by the company in issuing a new policy. The question is whether this is one of the instances in which posting a letter is a constructive communication and is operative at once so as to make a subsequent revocation ineffective, or the death of a party or the perishing of the subject-matter of the contract or the non-delivery of the letter immaterial. Tayloe v. Merchants' Fire Insurance Company, 9 How. 390, 13 L. Ed. 187; Patrick v. Bowman, 149 U. S. 411, 13 S. Ct. 811, 37 L. Ed. 790; Burton v. United States, 202 U. S. 344, 386, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362. We find the general rule well stated in Restatement of the Law of Contracts thus: " § 64. An acceptance may be transmitted by any means which the offerer has authorized the offeree to use, and if so transmitted is operative and completes the contract as soon as put out of the offeree's possession without regard to whether it ever reaches the offerer, unless the offer otherwise provides." " § 66. An acceptance is authorized to be sent by the means used by the offerer or customary in similar transactions at the time when and the place where the offer is received, unless the terms of the offer or surrounding circumstances known to the offeree indicate otherwise." In Williston on Contracts, § 83, it is said that authority from the offerer to use the particular agency is at the bottom of the matter, and "the question whether that medium was authorized is one of fact depending upon what would reasonably be expected by one in the position of the contracting parties in view of prevailing business customs." The offer in this case does not state how its acceptance is to be communicated. It was not itself made by letter, but by a policy manually delivered six years before. The correspondence between the attorneys referred to the offer, but did not alter it, if indeed the company's attorney had any authority in the premises. There is no evidence of any custom about this matter in the insurance business. The Kentucky court has held that the use of the mail is authorized, with irrevocable consequences. Northwestern Mutual Life Ins. Co. v. Joseph (Ky.) 103 S. W. 317, 12 L. R. A. (N. S.) 439. The New York court has held otherwise. Crown Point Iron Co. v. Ætna Ins. Co., 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147. See, also, Hutchins v. United States Auto Ins. Exchange, 170 Minn. 273, 212 N. W. 451; Farmers' Mutual Ins. Co. v. Phœnix Ins. Co., 65 Neb. 14, 17, 90 N. W. 1000, 95 N. W. 3. Considering the uncertainties that would exist touching the liabilities of insurance companies and the frauds to which they would be exposed by claims that letters had been mailed which were not received, we think it unreasonable to conclude that the use of the mail at the risk of the company is authorized in such cases as this. The Georgia court in whose jurisdiction the letters here involved were posted agrees with the New York court that not the mailing, but the receipt by the company, is effectual. Bankers' Mutual Casualty Co. v. People's Bank of Talbotton, 127 Ga. 326, 56 S. E. 429. The case of Pequot Manufacturing Corporation v. Equitable Life Assurance Society, 253 N. Y. 116, 170 N. E. 514, is not to the contrary, for the letter there in question was received by the company, although the company had not acted as it requested. And in Lofaro v. John Hancock Mutual Life Ins. Co., 239 App. Div. 54, 265 N. Y. S. 724, the question of mailing became immaterial because the policy was held to have been presented for a cancellation of the double indemnity to an agent of the company who sufficiently represented it.

The insurance company accordingly relies strongly on the delivery of the policy to Nicholson as instantly operative to discharge it from its original liability and to substitute a liability for the surrender value only. This depends on Nicholson's authority to represent the company in such a transaction. It is plain that, if as to it he was not authorized to represent the company, no more effect can be given what was done with him than if it had occurred with any stranger. Compare Barr v. Lapsley, 1 Wheat. 151, 4 L. Ed. 58; Huff v. Columbia Ins. Co., 94 W. Va. 663, 119 S. E. 854; Ciokewicz v. Lynn Mut. Fire Ins. Co., 212 Wis. 44, 248 N. W. 778; 13 C. J. "Contracts," § 90; Restatement Agency, § 268. In order to terminate the existing contract of insurance, the request must be made by the insured or his authorized agent to the insurer or to one having adequate authority to act in the matter in its behalf. Crown Point Iron Co. v. Ætna Ins. Co., 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147. We are satisfied that Nicholson was not so authorized nor held out as being authorized, and that he himself did not so regard it. It is true that the company furnished him an office and a telephone and called him "Manager" in a written contract defining his duties, but his powers were strictly limited by the writing to appointing and supervising soliciting agents in a fixed

territory, collecting premiums and getting policies reinstated, forwarding to the company all applications, and being governed by its rules. It is expressly declared that "he is not authorized but forbidden to make, alter or discharge insurance contracts for the Company, to waive forfeitures, grant permits, or credits, or bind the Company in any way." He is not shown to have been held out as having any other authority. This policy has the usual clause in it: "No agent is authorized to make, modify, or discharge contracts, or to waive forfeitures or to extend the time for paying premiums." It expressly declares that all premiums are due and payable at the head office of the company, that an assignment must be filed there, proof of death must be filed there, and finally that "all benefits under this policy are payable at the head office of the Company in Philadelphia." The cash surrender value was therefore to be paid there by the company, and the inference is fair that the physical surrender of the policy or any other act which is to change the company's risk and liability is to be done or made known there. The agent at Macon acted only as a transmitting medium at the request of the bank. The agent so understood, for he did not notify the company that the policy had been surrendered and its value was due, but sent it to the company, stating that the bank "wishes to surrender it," and asked for the prompt sending of some necessary form. He called attention to December 29th, three days away, as the critical date, which would have no meaning if the surrender were already accomplished. The next day, of his own accord, he telegraphed to recall his forwarding of the policy before it should arrive in Philadelphia. In doing this he plainly did not represent his company, but was looking after the interests of the bank which had been intrusted to him. He thus did not attempt to represent the company, and the company cannot rightly claim he did after having so explicitly limited his authority. His sending the policy by mail for surrender was as though the bank had so sent it.

■ Before the letter sent by the bank to the company or that sent with the policy for the bank to the company arrived, the loss occurred. The happening of the loss put an end to the negotiation, since it had not then ripened into a perfect contract. Ciokewicz v. Lynn Mutual Fire Ins. Co., 212 Wis. 44, 248 N. W. 778. The telegram of Nicholson sent in the bank's behalf and ratified by it was also effective, for an acceptance, like an offer, which has not yet merged into a contract, may be revoked. 13 C.

J. "Contracts," § 107; Clarke on Contracts, p. 46. We conclude that on December 27, 1930, when Hawkes died, the policy stood of force, and that the company was liable to the bank for its face.

Judgment affirmed.

## On Motion for Rehearing.

■ It is argued that the policy was physically delivered at the office of the company in Macon and that the bank thought it was dealing with the company in so doing, and that a surrender resulted immediately irrespective of the authority of the agent who received the policy and of his intentions; that any agent in the office must be considered to have authority to receive what the patron of the company had the right to leave there. The position taken assumes that the Macon office was the place where the surrender was to be made. The policy appoints no place, certainly not the Macon office. As pointed out in the opinion, its provisions indicate rather that the home office is contemplated. The language is, "the insured or assigns * * * may surrender this policy"—that means give it up to the company. Surrender is a transaction. It is wholly at the option of the policyholder, but nonetheless the company must participate. The company is not present in an empty office. Physically pushing the policy under the door, even of the home office, though it would put the policy out of the control of the holder, would not be a surrender unless and until some competent agent of the company received it and comprehended what was intended. Leaving it with a janitor there would accomplish no more than to constitute the janitor the surrenderer's agent to deliver it to some one authorized to represent company. It might be otherwise in a case where the company was evading a surrender, or where special circumstances prevented a regular procedure. The Macon office clearly appears to have been one furnished to Nicholson for the solicitation of insurance only, and not for the settlement or alteration of insurance contracts. No one in it had authority to represent the company in the latter kind of business. A delivery of the policy there to such an agent with intent to surrender it was not a surrender to the company or a communication to it of such intent. The company was not bound by what Nicholson might say or do or learn in such a transaction. For that simple reason the bank also was not bound, although it might have thought that in dealing with him it was dealing with the company. If Nicholson could not represent

the company in receiving the surrender there was no surrender until the matter reached someone who did represent it. Nicholson, acting at the instance of the bank, was only an intermediary to effect a surrender. The effort at surrender was cut short, before it was ever accomplished, both by the death of the insured and by the telegraphic revocation.

Rehearing denied.