LOVETT et al. v. PHOENIX MUT. LIFE INS. CO.

Civil Action No. 117.

District Court, D. Rhode Island.

May 6, 1942.

---

[1] No opinion for publication.

Leo M. Goldberg, of Goldberg & Goldberg, of Providence, R. I., for plaintiffs.

Elmer E. Tufts, Jr., and Ronald B. Smith, of Edwards & Angell, both of Providence, R. I., for defendant.

HARTIGAN, District Judge.

This is a civil action wherein the plaintiffs pray for the reformation of a certain insurance policy and the recovery of certain alleged total and permanent disability benefits under said reformed policy and was tried upon the facts without a jury.

The plaintiffs are James H. Lovett, the insured, and Anna M. Lovett, his wife and the beneficiary named in said policy, both of whom are citizens of the State of Rhode Island. The defendant is a corporation duly organized and existing under the laws of Connecticut and is authorized by the laws of Rhode Island to do insurance business in that State and has an office in the City of Providence.

On August 27, 1929, the defendant issued to the plaintiff, James H. Lovett (hereinafter referred to as Lovett) its ordinary life insurance policy bearing number 573873, (Pltff.'s Ex. 1) in the principal sum of $4,000, and in case the death of said Lovett should be accidental, under the conditions set forth in section 20 of said policy, the principal sum of said policy to be $8,000.

Under the terms of said policy, the defendant agreed to pay Lovett during "permanent and total disability" an income of $40 per month and to waive the payment of premiums on said policy during such disability. The policy also provided that Lovett should have the option after the premiums for two years had been paid, to take (1) the cash value of said policy, or (2) participating paid-up insurance.

The provisions of the policy containing these options are as follows:

"12. Cash Value. At any time after the premiums for two years have been paid the Company will purchase this policy for its cash value on satisfactory release and surrender at the Home Office while it is in force. Such cash value at the end of a fully paid policy year or within the thirty-one days of grace hereinbefore provided is the then terminal reserve for each $1,-000 of the face amount of insurance under this policy and under any insurance additions credited to it, together with any cash dividends and any premium deposit fund then credited hereto, less any indebtedness to the Company against this policy * * *."

"13. Participating Paid-up Insurance. Or, in lieu of such cash value, upon satisfactory request by the insured and assigns, the Company will change this contract to a participating paid-up life policy for such amount as said cash value, less the amount of the premium deposit fund, will purchase when used as a net single premium. The amount of the premium deposit fund then credited hereto, if any, will be used as a single premium at the Company's gross rates to increase the amount of such paid-up policy."

On September 25, 1939, Lovett went to the Providence office of the defendant where he talked with Walter E. Moore, a commission agent of the defendant, and told him that it was "pretty hard" for him to meet the payments on the policy, and that he would like to change it to a paid-up policy. Moore referred Lovett to George

E. Carroll, the defendant's Providence cashier, and Lovett made the same request to him. Lovett then executed and delivered to Carroll a request that said policy number 573873 be changed, as provided therein, to a paid-up policy without disability benefits. He also left with Carroll the policy for the purpose of sending it to the defendant's home office for endorsement. This written request was on the defendant's form FA 26 (Pltff.'s Ex. 2) entitled "Release for Paid-up Policy and Cancellation of Notes" and reads as follows:

"Phoenix Mutual Life Insurance Company

"I hereby request that Policy No. 573873 be changed as provided therein to a Paid-up Policy for $1403, without disability benefits and without additional accidental death benefits. In consideration of the cancellation of the Policy Loan Note for $77.85 held against said policy and in further consideration of such change either by endorsement on said policy or the issue of a new Paid-up Policy under the same number, I hereby release and surrender to the Phoenix Mutual Life Insurance Company, of Hartford, Connecticut, all my right, title and interest in said policy as now written and in any dividend fund or Premium Deposit Fund now credited thereto.

"Dated at Providence R I this 25 day of Sept 1939.
"(Sgd.) James H. Lovett,
"Insured.
"Witness: (Sgd.) G E Carroll."

The same day, i. e., September 25, 1939, Carroll mailed said executed form FA 26 and said original policy to the home office of the defendant in Hartford, Connecticut. Carroll's transmittal letter and the documents referred to therein were received at the home office on September 26, 1939, at 8:45 A. M., and were forthwith referred to departments concerned with verifying and recording policy changes.

On September 27, 1939, Lovett suffered a heart attack and he testified that he has been unable to work since that date.

On September 28, 1939, Lovett called Moore to his home and asked that his previous request of a paid-up policy without disability benefits, as set forth in defendant's form FA 26, be revoked and the policy reinstated in its original form. Moore talked with Lovett at about 2 P. M.

on September 28, 1939, and obtained from Lovett his check, (Pltff.'s Ex. 4), payable to the defendant company in the sum of $22 and Lovett also signed a document at Moore's request, defendant's form 547A (Pltff.'s Ex. 3). Prior to 5 P. M. on September 28th Moore delivered Lovett's check and said form 547A to Carroll who rejected them. Said form 547A contained the following provision: "This certificate shall not be valid unless dated and countersigned by Company's authorized Manager or Cashier."

Neither Moore nor Carroll notified the defendant's home office of Lovett's request and as far as it appears Lovett took no further steps until this action was brought to effect such revocation. Thereafter, on September 29, 1939, said policy number 573873 was endorsed at the home office of the defendant as follows:

"In accordance with a request from the Insured dated the 25th day of September, 1939, this policy is hereby made a participating paid-up policy of the same kind for $1,403.00, without disability or double indemnity benefits.

"Dated at Hartford, Connecticut, this 29th day of September, 1939.
"(Sgd.) J R Larus
Vice President"

The loan note, defendant's form FA 31, in the amount of $77.85 (Pltff.'s Ex. 5), was stamped "Paid" September 30, 1939.

October 2, 1939, the defendant mailed the endorsed policy, together with plaintiff's cancelled loan note, etc., to Carroll.

October 6, 1939, Moore returned to Lovett: (1) The uncashed check for $22.00 (Pltff.'s Ex. 4); (2) the defendant's form 547A (Pltff.'s Ex. 3); (3) a white piece of paper with words on it: "Sorry —Company cannot accept. GC" (Pltff.'s Ex. 7); (4) defendant's form A45, (Pltff.'s Ex. 6), which was signed by defendant on August 27, 1938, acknowledging that the defendant "Received Seventy-seven ... 85/100 Dollars on account of the principal of indebtedness on Policy No. 573873 on the life of James H. Lovett," and (5) the Premium Loan (Pltff.'s Ex. 5) marked "Paid Sep 30 1938." Said Exhibit 5 was signed by Lovett and was to the effect that on September 16, 1938, he borrowed from the defendant $77.85 to apply towards the payment of premium or interest, or both due on the policy on August 27, 1938.

The original policy, with the endorsement made by the defendant on September 29, 1939, was also returned to Lovett.

Lovett testified that Moore, in his conversation with him on September 28, 1939, told him that the policy was on the way or in Hartford. Lovett admitted that he never asked the defendant for a disability form and had never filed one.

Alden T. Bunyan, an associate actuary of the defendant, testified that the transmittal letter of Carroll, with enclosures in regard to Lovett's request for a paid-up policy, were received at the home office in Hartford at 8:45 A.M. on September 26, 1939; that the calculation sheet (Dft.'s Ex. D) of the paid-up value of the policy was stamped September 27, 1939, and transferred to the change section of actuarial department on September 28, 1939, for recording as shown on daily listing sheet (Dft.'s Ex. E), and that on September 28, 1939, the plaintiff's loan was cancelled and the policy changed to a paid-up value policy. On September 29, 1939, a notation was made on the record of change to a participating paid-up policy for $1403 without disability or double indemnity benefits.

The plaintiff contends that the endorsement of September 29, 1939, which was signed by J. R. Larus, Vice President, was null and void because it did not comply with Clause 9 of the policy which provides as follows: "Modification of Contract. No modification of this printed policy can be made except over the signature of an executive officer of the Company, to wit: the President, a Vice President, the Secretary or an Assistant Secretary, and countersigned by its Registrar, or an executive officer." He further contends that his request for a modification of the policy as set forth in plaintiff's Exhibit 2 must be read in connection with Clause 13 of the policy which is quoted supra. The plaintiff also contends that his request (Ex. 2) was recalled by him before the defendant's endorsement of September 29, 1939, was made.

The plaintiff and defendant are in accord that the provision of the policy granting Lovett the option to take participating paid-up insurance without disability benefits was in the nature of a continuing offer from the defendant to Lovett and that the election of Lovett to take participating paid-up insurance became effective and irrevocable when notice thereof was communicated to defendant.

The defendant stated at the trial that it was not pressing its first defense to the jurisdiction of the court.

The plaintiff filed ten requests for special findings of fact and in respect thereto I make the following findings:

1. Walter E. Moore was, on September 28, 1939, a commission agent of the defendant.

2. George E. Carroll was, on September 28, 1939, cashier of the Providence office of the defendant. Moore and Carroll were agents of the defendant for some purposes and the testimony did not definitely define their authority and the scope of their respective agencies.

3. James H. Lovett did not, on September 28, 1939, do everything within his power to revoke, recall and cancel his request for a paid-up policy (Pltff.'s Ex. 2—Dft.'s Form FA 26).

4. I find that James H. Lovett did, on September 28, 1939, communicate his intention to revoke, recall and cancel his request for a paid-up policy (Pltff.'s Ex. 2—Dft.'s Form FA 26) to Walter E. Moore.

5. I find that James H. Lovett's communication to Walter E. Moore of his intention to revoke, recall and cancel his request for a paid-up policy (Pltff.'s Ex. 2—Dft.'s Form FA 26) was known by and communicated to George E. Carroll on September 28, 1939.

Requests 6, 7, 8 and 9 are denied because each involves a conclusion of law.

10. This request is denied because it is not necessary for the conclusion hereinafter reached.

The plaintiff strenuously contends that the contents of defendant's form FA 26 (Pltff.'s Ex. 2) were communicated to the defendant on the date when it was brought to the attention of Vice President Larus on September 29, 1939, and in support of this contention cites Fidelity Mut. Life Ins. Co. v. Merchants' & M. Bank, 5 Cir., 71 F.2d 777. The facts in that case are clearly distinguishable from the instant case. In that case the court said, at page 780 of 71 F.2d: "Before the letter sent by the bank to the company or that sent with the policy for the bank to the company arrived, the loss occurred. The happening of the loss put an end to the negotiation, since it had not then ripened into a perfect

contract. Ciokewicz v. Lynn Mutual Fire Ins. Co., 212 Wis. 44, 248 N.W. 778. The telegram of Nicholson sent in the bank's behalf and ratified by it was also effective, for an acceptance, like an offer, which has not yet merged into a contract, may be revoked. 13 C.J. 'Contracts,' § 107; Clarke on Contracts, p. 46."

In the instant case, Lovett's request made on Form FA 26 (Pltff.'s Ex. 2) arrived at the home office of the defendant at Hartford at 8:45 A.M. on September 26, 1939, the day before Lovett suffered his heart attack, and was forthwith referred to departments of the defendant concerned with verifying and recording policy changes.

Under the authority of the Fidelity Mut. Life Ins. Co. case, it would seem that when Form FA 26 arrived at the home office of the defendant and the agents of the defendant commenced to process Lovett's requested change, the matter "ripened into a perfect contract."

Bunyan testified that the paid-up value of Lovett's policy for $1,403 was stamped on September 27, 1939 (Dft.'s Ex. D), the same day that Lovett suffered his heart attack and a day before Lovett communicated his condition to Moore and his desire to revoke his request for a paid-up policy without disability benefits.

On September 28, 1939, the policy and form FA 26 were transferred to the change section of the defendant's actuarial department for recording and the plaintiff's loan was cancelled on the defendant's records and the policy changed to a paid-up value. Vice President Larus signed the endorsement on September 29, 1939.

■ The testimony leads me to the conclusion that the processing of the plaintiff's requested change was accomplished by competent agents of the defendant who comprehended the intention of Lovett and proceeded forthwith to comply with that intention. These steps are customary. There is no evidence that I recall that Lovett brought to the attention of Larus, who made the endorsement on behalf of the defendant, his intention to revoke, recall and cancel form FA 26 before Larus affixed his signature to the endorsement.

■ The plaintiff in his brief cites Union Mut. Insurance Company v. Wilkinson, 80 U.S. 222, 13 Wall. 222, 20 L.Ed. 617, in support of his contention that Lovett's communication on September 28, 1939, to Moore and Carroll of his intention to revoke, recall and cancel his request for a paid-up policy was a communication to and knowledge of the defendant. That case is not in point with the instant case and even if it were, Lovett's communication on September 28, 1939, to Moore and Carroll was made two days after the defendant at its home office was taking the necessary steps to carry out and perfect Lovett's intention as expressed by him in form FA 26.

The plaintiff contends that the endorsement on the policy was not valid because it was not properly endorsed in accordance with Clauses 9 and 10 of the policy. Clause 9 is quoted supra and Clause 10 reads as follows: "10. Entire Contract. This policy, with the application herefor, a copy of which is attached hereto, constitutes the entire contract between the parties hereto and all statements made by the insured or on his behalf, shall, in the absence of fraud, be deemed representations and not warranties; no such statement shall avoid or be used in defense to a claim under this policy, unless it is contained in the written application and a copy of the application is attached hereto when issued."

In support of this contention the plaintiff cites Clark v. Metropolitan Life Ins. Co., 126 Me. 7, 135 A. 357.

Clauses 9 and 10 appear in the policy, under the provisions entitled "Privileges and Provisions", while Clause 12, pertaining to "Cash Value" and Clause 13, "Participating Paid-up Insurance", appear under the heading "Non-Forfeiture Provisions."

The Clark case is not in point with the case at bar. The court in that case said, at page 359 of 135 A.: "Here again we must not overlook the fact that this action is not on the equity side of the court. But, even if we were, it is plain that the insured, in his lifetime, had not done all in his power to effect a change of beneficiary."

In Pequot Mfg. Corporation v. Equitable Life Assur. Soc., 253 N.Y. 116, 170 N.E. 514, the court said: (170 N.E. 515)

"The right granted by the terms of the policies to the insured upon the lapsing of the policies to select one of the three options is in the nature of a continuing binding provision, a vital part of the contracts, required as to options (b) and (c) by section 88 of the Insurance Law. It is

self-operating in so far as the defendant is concerned. When the insured communicated his election of the option which he desired to take, that part of the contract was closed. The defendant was not required to do anything. * * * Whatever entries the defendant made upon its books or upon the policies were simply evidences of the transaction, part of the machinery used in doing the business, and did not and could not affect the legal rights and obligations of the parties. Those rights and obligations were definitely fixed by the terms of the contracts."

It is my opinion that the ruling in the Pequot Mfg. Corporation case is controlling in the instant case. When Lovett made his written request that Policy No. 573873 be changed as provided therein to a Paid-up Policy for $1,403, without disability benefits and without additional accidental death benefits and communicated his election of the option which he desired to take to the defendant at its home office on September 26, 1939, "that part of the contract was closed."

In the case of Lipman v. Equitable Life Assur. Soc. of the United States, 4 Cir., 58 F.2d 15, 18, the court said: "Since the insured had the option to surrender her policy and take the cash surrender value on October 10th, there can be no question but that the rights of the parties became fixed and insured became entitled to the cash surrender value, and nothing more, when she exercised the option. It was not necessary that defendant do anything. There was a meeting of the minds of the parties when insured accepted the continuing offer of the company evidenced by the option. Pequot Mfg. Corporation v. Equitable Life Assurance Society, 253 N.Y. 116, 170 N.E. 514; McCormick v. Travelers' Ins. Co., 215 Mo.App. 258, 264 S.W. 916; Ingram Johnson v. Century Ins. Co., 1909 Ct. of Session Cases, Fifth Series, Scotland, p. 1032. * * *"

■ I do not agree with the plaintiff's contention that the endorsement made upon the policy by the defendant on September 29, 1939, is a "modification" of the policy within the meaning of Clause 9 thereof requiring the signatures of two officers of the defendant.

On the contrary, it is my opinion that the law established in the following cases is controlling here:

In the case of Dannhauser v. Wallenstein, 169 N.Y. 199, 62 N.E. 160, the court said (62 N.E. 162): "* * * We are, however, of the opinion that the paid-up policy was not a new contract. It was simply a continuation of the original contract under the option which gave the holder thereof the right, after two or more annual premiums had been paid, to cease paying the annual premiums, and take a paid-up policy in exchange for the first one. It was a change in the mere form of the contract expressly provided for by its own terms. It is true that the first policy, the original evidence of the contract between the insured and the company, was 'surrendered to the company and canceled' when the paid-up policy was issued; but this was simply a part of, and in compliance with the terms of, the original contract. The contract was continued, as it provided that it might be, in the form of a paid-up policy, such as was accepted by the defendant. It was not a modification, but a fulfillment of the original contract. * * *"

In Aetna Life Insurance Company v. Dunken, 266 U.S. 389, 399, 45 S.Ct. 129, 132, 69 L.Ed. 342, the court said: "* * * The second policy here was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of the contract contained in the first one. By those provisions, upon the simple application of the insured, the new policy must issue. Nothing was left to future agreement. The terms of the new policy were fixed when the original policy was made. * * * It was issued not as the result of any new negotiation or agreement but in discharge of pre-existing obligations. * * * If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a suit in equity for specific performance. * * *"

In Griffin v. McCoach, 5 Cir., 116 F.2d 261, 263, the court said: "* * * The conversion of the term policy into a full life policy, the change of beneficiary, and the assignments of interests in the policy were made in accordance with clauses in the policy specifically providing therefor. These changes were made by the insurer in the discharge of obligations incurred in and outstanding by virtue of the original insurance contract. Such changes do not constitute new contracts, * * *."

I have considered the plaintiff's request for rulings of law and they are denied except in so far as they are consistent with this opinion.

Judgment is ordered entered for the defendant for costs.