1 Ill. App.2d 272 (1954)
117 N.E.2d 393
Geneva L. Gerber and Marilyn E. Ransom, a Minor, by Geneva L. Gerber, her Guardian, Plaintiffs. Geneva L. Ransom and Marilyn Ransom Engel, Appellants,
v.
The Equitable Life Assurance Society of the United States, Defendant-Appellee.
Gen. No. 9,927.
Illinois Appellate Court.
Opinion filed January 28, 1954.
Rehearing denied February 26, 1954.
Released for publication February 26, 1954.
*273 G.W. HORSLEY, JOHN B. CRAIN, and L.H. LENZ, all of Springfield, for appellants.
HUNTER, KAVANAGH, McLAUGHLIN & BOND, of Peoria, for appellee; E.D. McLAUGHLIN of Peoria, of counsel.
MR. JUSTICE WHEAT delivered the opinion of the court.
Plaintiffs-appellants Geneva L. Ransom and Marilyn Ransom Engel, appeal from an adverse judgment entered by the circuit court of Sangamon county in their action to collect the adjusted principal amount of three insurance policies issued by defendant-appellee, The *274 Equitable Life Assurance Society of the United States, upon the life of James I. Ransom, now deceased.
Plaintiffs, as beneficiaries of the policies, contend the defendant did not prove its affirmative defense that the insured, prior to his death, exercised an option to surrender the policies in question and receive the cash surrender value thereof. This theory is based upon the following stipulated facts.
Each of the policies in question provided:
"... Within three months after ... default (of premium payment) this policy may be surrendered by the insured ... who may elect one of the following options: (a) To receive the cash surrender value of this policy; ..."
The premiums on each of the policies were in default but within such three-month period the following events occurred:
October 8, 1934: The insured mailed a letter addressed to defendant at its branch office in Peoria, Illinois, requesting payment of the cash surrender value of the three policies which were enclosed with the letter.
October 9, 1934: The insured's letter with enclosures was received by defendant's cashier at its Peoria branch office.
October 9, 1934: Defendant's assistant cashier forwarded the policies together with a company form requesting issuance of a check for the cash surrender value thereof to defendant's home office at New York. The insured's letter of October 8 was retained at the Peoria branch office.
October 11, 1934: The policies and form request were received by defendant at its home office in New York.
October 14, 1934: The insured died.
*275 Thereafter, the following occurred:
October 16, 1934: The defendant's home office issued and mailed to its cashier at its Peoria branch office its check payable to the insured in the amount of $67.02, being the net cash surrender value of the three policies.
October 16, 1934: Defendant's assistant cashier at the branch office wrote the home office advising that word had been received of the insured's death.
October 17, 1934: The policies in question were marked "cancelled" by defendant at its home office.
October 18, 1934: The assistant cashier's letter of the 16th advising of the insured's death was received by the home office.
October 19, 1934: Defendant's home office notified the cashier at its Peoria branch that the check issued in payment of the cash surrender value of the policies might be endorsed by the duly appointed personal representative of the insured.
October 20, 1934: Proof of the insured's death was delivered on behalf of plaintiffs to defendant's Peoria branch cashier, and the defendant's check in payment of the surrender value of the policies was thereafter refused by the insured's executor.
It was further stipulated
"... That the cashier and the assistant-cashier of the defendant in charge of its office at 301 South Adams Street, Peoria, Illinois, had power and authority to accept payment of any and all sums due to the defendant and to issue official receipts therefor, and to receive (but not to act upon or approve) proofs of death, proofs of loss, and communications for and on behalf of the company, but neither the said cashier nor assistant-cashiers, nor the sales agents had authority to modify policies, or in the event of lapse, to reinstate policies, nor to extend the time of payment of any *276 premium or to make loans thereon, or to alter the provisions as to payments to beneficiaries, or to make cash settlements upon surrender of policies."
Plaintiffs further point out that the insurance application, which is a part of the policies, provides "that no agent or other person except the president, a vice-president, the secretary, the treasurer or a registrar of the Society has power to make or modify any contract on behalf of the Society..." Plaintiffs accordingly contend that the insurer must show that the request for payment was communicated to some one of these officers or, at the very least, that defendant's agents at its home office had commenced processing the requested payment before the insured's death. As tending to show that the insured's request was not in fact so communicated to anyone in defendant's home office having authority to act upon it, plaintiffs emphasize that, by the express terms of the policy,
"the granting of any surrender value ... may be deferred ... for a period not exceeding ninety days after receipt of application therefor,"
and that defendant's check did not issue nor were the policies marked "cancelled" until after the insured's death. Finally, as it is stipulated that defendant's Peoria branch cashier had no authority to make cash settlements or enter into contracts on defendant's behalf, plaintiffs urge that communication to him of the insured's request for payment "had no more effect than if made to a stranger."
It is not clear from plaintiffs' argument that their theory is that the insured's letter is to be regarded, within the framework of contract law, as an offer which would become binding only on acceptance by defendant or its authorized agent. In any event, to support their contention that the insured's request must have been communicated to some one of the above enumerated *277 officers of defendant, plaintiffs rely upon Fidelity Mutual Life Ins. Co. v. Merchants' and Mechanics' Bank, 71 F.2d 777.
Examination of the reported decision in that case clearly reveals, however, that the court did not so hold either expressly or by implication. The court did hold that the intention of the bank, to which the policy in that case has been assigned, to exercise the option contained in the policy there in question must have been communicated "to the (insurance) company" to be effective. The court further held that, in the circumstances of that case, the company's soliciting agent or local manager who received the communication there relied upon, did so as agent for the bank, not for the company, and that his authority to act on behalf of the insurer was so limited that communication to him of intention to exercise the option was not communication to the insurance company. Moreover, at the outset of its discussion of the applicable law the court made the following statement which is of decisive significance here:
"The right of the bank as assignee to surrender the policy for... cash measured by its surrender value was an absolute option dependent only on the bank's will and act, and not requiring any consent on the part of the insurance company. The (written option contained in the policy) was a continuing offer on the company's part kept open for a sufficient consideration and requiring only the acceptance of the bank by its making the election to take the cash surrender value ..."
The same doctrine is firmly established not only in Illinois but in other jurisdictions as well. (Roth v. Kaptowsky, 393 Ill. 484; Tucker v. Equitable Life Assurance Society, 174 La. 598, 141 So. 71; Northwestern Mutual Life Insurance Co. v. Joseph, 31 Ky. L. Rep. *278 714, 103 S.W. 317; Decker v. New York Life Insurance Co., 94 Utah 166, 76 P.2d 568; Lovett v. Phoenix Mutual Life Ins. Co., 44 F. Supp. 888; Crown Point Iron Co. v. Aetna Ins. Co., 127 N.Y. 608, 28 N.E. 653.)
[1] From these decisions it is clear that in the instant case the insured's letter requesting payment of the cash surrender value of the policies was not, as plaintiffs seem to suggest, an offer which was subject to acceptance or rejection by the defendant. To the contrary, that letter constituted an acceptance of one of several continuing written offers or options made by the defendant to the insured in the insurance contract.
The decisive question upon this appeal is whether, during the insured's lifetime, his letter became effective as an acceptance of the defendant's offer to pay the cash surrender value of the policy. The defendant has not suggested that it became effective upon being mailed (see Fidelity Mutual Life Ins. Co. v. Merchants' and Mechanics' Bank, supra, and cases cited therein), and accordingly this court expresses no opinion as to that question on this record.
[2] Consequently, in accordance with the general rule applicable in such circumstances, the insured's letter never became an effective acceptance unless, during his lifetime, it was received by the defendant or someone authorized by defendant to receive such communications on its behalf. (See Restatement of the Law of Contracts, Sec. 69.) As the corporate defendant, however personified, can act only through its agents, the letter necessarily became effective, if at all, upon receipt by such agent duly authorized.
Section 69 of the Restatement of the Law of Contracts states that a written acceptance is to be considered "received," in such circumstances,
"... when the writing comes into the possession of the person addressed or some person authorized by him to receive it for him or when it is deposited in *279 some place which he has authorized as the place for this or similar communications to be deposited for him."
[3] In the "Comment" upon this section it is stated that "a written communications may be received though it is not read or though it does not even reach the hands of the person to whom it is addressed." While no Illinois decisions have come to this court's attention which are expressly decisive, the law of this State is, in the opinion of this court, established by clear implication in accord with the Restatement, at least to the extent indicated in the quoted comment. Thus it has been held in cases where acceptance by mail was authorized or contemplated that the acceptance is effective upon being posted. Where this rule is, for one reason or another, inapplicable, it has been held that an acceptance is effective when "received" by the offeror and there is no suggestion in the decisions so holding that a written acceptance is not to be considered "received" until read by or placed in the hand of the addressee. (See Estate Stove Co. v. Kenney, 234 Ill. App. 366; Wagner v. McClay, 306 Ill. 560; Geary v. Great Atlantic & Pacific Tea Co., 366 Ill. 625; McKeown v. Western Union Telegraph Co., 240 Ill. App. 559.) Whether the Illinois law is in accord with that part of the Restatement rule to the effect that deposit of the writing in a place authorized by the offeror constitutes receipt, there is no occasion to decide on this record because it is stipulated here that the insured's letter was "received by the cashier" of the defendant at its Peoria office on October 9, 1934, which was during the insured's lifetime. It is further stipulated that the "cashier and assistant-cashier of the defendant in charge of its (Peoria) office had power and authority ... to receive communications for and on behalf of the company ..."
*280 [4] Accordingly, in the opinion of this court it is clear from the literal terms of the stipulation that the letter became effective as an acceptance on the date indicated because the cashier was authorized to receive communications on behalf of the company. It is immaterial that neither he nor his assistant was authorized to "approve" such communications. The continuing offer having been made by the defendant when the policy was issued, acceptance of it was not subject to the "approval" of any agent of defendant whatever his authority might be. For the same reason, it is immaterial that the power "to make or modify any contract on behalf of (defendant)" was confined to certain of its officers.
[5, 6] It is elementary that acts done by the parties to a bilateral contract in performance of their obligations thereunder are to be distinguished from their acts resulting in formation of the contract. Proof of performance or non-performance of certain acts alleged to be contractual obligations may, in some circumstances, be circumstantial evidence on the question whether or not a contract was ever made or formed. Here, however, the proof clearly and affirmatively shows an offer and an acceptance thereof received by the offeror which bound both parties to perform their respective obligations. Accordingly, it is completely immaterial to the issues in this case which of defendant's agents, wherever located, had authority to "act upon" communications to the defendant or to make cash settlements, or, in general, to perform the insurance company's obligations which attached upon receipt of the acceptance. No reason has been suggested and none appears to show why the authority to perform the contract must have been delegated to the same agent authorized to receive acceptance of the offer from which the obligation to perform arises.
*281 [7] The further stipulated facts as to the acts of defendant's agents in processing the insured's acceptance, beginning with the preparation of the interoffice memorandum at the branch office and ending with tender of the surrender value of the policies to the insured's personal representative, describe merely the steps taken by defendant to perform its contractual obligation. In the opinion of this court these facts are relevant in this case, if at all, only as cumulative evidence of the decisive question whether the insured's acceptance was received by an agent authorized to receive communications on defendant's behalf.
These conclusions, in the opinion of this court, do not conflict with, and are in fact confirmed by, the decision in Lovett v. Phoenix Mutual Life Ins. Co., 44 F. Supp. 888 (D.C.R.I.), relied upon by plaintiffs as authority for the proposition that the insured was not bound to his election until the processing of his request had been commenced in the defendant's home office. In the course of that decision the court did remark as follows:
"... it would seem that when (the form requesting conversion of the policy) arrived at the home office of the defendant and the agents of the defendant commenced to process (the insured's) requested change, the matter `ripened into a perfect contract.'"
The court's precise meaning, clearly indicating that the processing of the request was but evidence of the insured's election already communicated, is apparent in the following subsequent language of its opinion:
"In Pequot Mfg. Corporation v. Equitable Life Assur. Soc., 253 N.Y. 116, 170 N.E. 514, the court said:
"`The right granted by the terms of the policies to the insured upon the lapsing of the policies to select one of the three options is in the nature of a continuing binding provision... It is self-operating in so far as the defendant is concerned. When the insured *282 communicated his election of the option which he desired to take, that part of the contract was closed. The defendant was not required to do anything... Whatever entries the defendant made upon its books or upon the policies were simply evidences of the transaction ... and did not and could not affect the legal rights and obligations of the parties. Those rights and obligations were definitely fixed by the terms of the contracts.'
"It is my opinion that the ruling in the (Pequot Case) is controlling in the instant case. When (the insured) ... communicated his election of the option ... to the defendant ... `that part of the contract was closed.'"
Similarly, analysis of the decision in the Fidelity Mutual Case, supra, primarily relied on by plaintiffs, readily resolves its apparent conflict with the conclusions reached above. In that case there was not, as here, any direct evidence, by stipulation or otherwise, as to the critical question of the insurance company agent's authority to receive communications for the company. It was therefore necessary for the court to recite and discuss at length the facts which did appear as to the scope of the agent's authority in order to determine inferentially the limits thereof. From such evidence the court concluded in substance that the agent was not authorized to receive communications on behalf of his principal which is contrary to the stipulated fact here.
As the insured in this case became bound to deliver up his policy and the defendant to pay the cash surrender value thereof upon receipt by its agent of the insured's letter accepting the policy option, it is unnecessary to decide the additional questions raised by plaintiffs. The judgment of the circuit court of Sangamon county finding the issues in defendant's favor will be affirmed.
Affirmed.