### LAUER v. MICHIGAN LIFE INSURANCE CO.

INSURANCE—SURRENDER—DEATH.

> Surrender of life insurance policy by insured and beneficiary in accordance with terms of policy and promise of payment of surrender value by insurer *held*, not abrogated by death of insured prior to payment of surrender value.

Appeal from Saginaw; Browne (Clarence M.), J. Submitted June 19, 1934. (Docket No. 103, Calendar No. 37,901.) Decided October 1, 1934.

Bill by Violet L. Lauer against Michigan Life Insurance Company to set aside surrender receipt of an insurance policy and restoration of policy to full force and effect. Decree for plaintiff. Defendant appeals. Reversed.

*Robert H. Brucker* (*Raymond R. Kendrick,* of counsel), for plaintiff.

*Samuel D. Pepper* (*Herbert P. Orr,* of counsel), for defendant.

WIEST, J. The husband of plaintiff was insured by defendant company with plaintiff as beneficiary. May 5, 1932, the insured desired to obtain the surrender value of the policy and sent to defendant a receipt printed on the policy, signed by himself and the beneficiary, in order to accomplish that end. Defendant's local agent at Saginaw forwarded the policy and receipt to defendant and, on May 13, 1932, wrote the insured that the surrender value of $144 would be paid on or about July 8, 1932. It was not so paid and the insured, by letter, on July 15, 1932, made inquiry as to the reason. July 17, 1932, the insured died very suddenly and defendant's local agent was notified of his death the next day. July 19, 1932, the local agent visited defendant's office in Detroit and made report of the insured's death and defendant company sent out a letter, addressed to the insured, inclosing a check for the surrender value of the policy dated as of July 15, 1932. Plaintiff refused the check and filed the bill herein to have the surrender receipt canceled and the insurance decreed in force and obtained a decree to such effect. Defendant appeals, claiming that, upon receipt of the surrender of the policy and the promise, by letter, to pay, the policy was canceled and payment of the obligation after death of the insured was valid.

The insured and beneficiary had a right to surrender the policy. This they did. Defendant accepted the surrender by letter promising payment. Thereupon the surrender value and obligation to pay became fixed in accordance with contract rights. Rights so fixed were not changed by death of the

insured nor the accomplished surrender abrogated. The circuit judge found:

"That the plaintiff and her husband did in fact execute and forward to the defendant the policy bearing the indorsement, in form a receipt for $144 under the mistaken belief that the money would be paid promptly; that the defendant having full knowledge of the death of plaintiff's decedent and for the purpose of attempting the completion of the surrender of the policy, did on July 19, 1932, forward what purported to be a check issued July 15, 1932, but which was in fact issued after the assured's death; that in sending this remittance, the defendant did not act in good faith and that no effect can be given to their attempted payment as any evidence of an acceptance of surrender, or cancellation of the policy by them. Although the policy was in the possession of the defendant, no witness appeared in its behalf to fix the time of the alleged cancellation of the policy.

"The court finds from all of the testimony and the documentary evidence introduced that the policy was never canceled by defendant as a matter of fact."

There was no fraud perpetrated by the insurance company, nor was the accomplished surrender abrogated or the policy reinstated by the death of the insured before payment.

In *Pacific States Life Ins. Co.* v. *Bryce* (C. C. A.), 67 Fed. (2d) 710 (91 A. L. R. 1446), the pivotal questions here presented were before the court of appeals of the tenth circuit. There an insured and his beneficiary mailed the policy to the insurance company and before payment of the surrender value the insured died. The court stated:

"Plaintiff's theory, adopted by the trial court, is that the execution of the surrender agreement was

an offer by the insured to the company to surrender the policy for a cash payment of $435; that such offer lapsed and the surrender agreement voided because the surrender value was not paid within a reasonable time or before the death of the insured.

"With this construction of the policy contract we are not in accord. It puts the cart before the horse. The policy vested in the insured certain definite rights, among them the right to be paid the reserve on his policy in cash upon a surrender of his policy, if demanded within a specified time. The insured did demand the surrender value within the prescribed time, and surrendered his policy. When he did so—a month before his death—he became absolutely entitled to payment in cash of $435. Upon his death his estate, and not his beneficiary, became entitled to that sum. The offer is contained in the policy contract, and is from the company to the insured; the option is in the insured and not the company, and his acceptance completes the contract; the company has no right to accept or reject; its obligation to pay is absolute. Under plaintiff's theory, an insured may only offer to surrender his policy for its cash value; the company may then accept or reject the offer, and if it fails to pay as agreed, the offer lapses. Such a construction would wipe out the right of an insured to the cash surrender value of his policy, because the company could defeat his right by rejecting his offer, or by failing to pay. To construe an exercise of an option as an offer to the company, subject to rejection or lapse, would be to warp the plain terms of the contract and to deny the insured a right he has paid for. If Bryce, on March 15th, had sued the company for $435, could the company have defended on the ground that it had not accepted his offer to take the cash surrender value? Clearly not; yet plaintiff's contention comes down to that.

"The cases, as far as we are advised, are at one in holding that the rights of the parties are fixed

when an option given by a policy is exercised by the insured. In *Lipman* v. *Equitable Life Assurance Society* (C. C. A.), 58 Fed. (2d) 15, 18, the insured was killed the day the application for the surrender value was received by the company and before the check therefor was mailed. The fourth circuit court of appeals held that liability was limited to the·surrender value, Judge Parker saying:

" 'Since the insured had the option to surrender her policy and take the cash surrender value on October 10th, there can be no question but that the rights of the parties became fixed and insured became entitled to the cash surrender value, and nothing more, when she exercised the option. It was not necessary that defendant do anything. There was a meeting of the minds of the parties when insured accepted the continuing offer of the company evidenced by the option.'

"Other cases to the same effect are *Pequot Manfg. Corp.* v. *Equitable Life Assurance Society,* 253 N. Y. 116 (170 N. E. 514); *State Life Ins. Co.* v. *Finney,* 216 Ala. 562 (114 South. 132); *Northwestern Mutual Life Ins. Co.* v. *Joseph,* 31 Ky. Law Rep. 714 (103 S. W. 317, 12 L. R. A. [N. S.] 439); *McCormick* v. *Travelers' Ins. Co.,* 215 Mo. App. 258 (264 S. W. 916); *Cooper* v. *West,* 173 Ky. 289 (190 S. W. 1085). Plaintiff distinguishes these cases upon the ground that there was an unreasonable delay of some 40 days in the case at bar, not present in the cited cases. The delay of the company, assuming it to be unreasonable, was a breach of its contract to pay the surrender value; it does not follow from the fact that a contract is breached, that there never was a contract."

That case was an action at law brought by the beneficiary but the legal principles there stated effectually bar this suit.

The decree is reversed and the bill dismissed, with costs to defendant.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.