Irving L. Levey, J.
The plaintiffs in this proceeding, father and son, seek to throw the assets of the defendant bank into permanent receivership upon the premise that they are creditors of an institution which has been “nationalized” within the meaning of section 977-b of the Civil Practice Act.
The temporary receivers, appointed by the court, have moved to examine certain New York banks, reputed to be holding funds for defendant’s account.
Because of the many and complicated issues involved, one being the sensitive area of relationship between the United States and Czechoslovakia, it was deemed desirable to assign the entire matter to a Referee to hear and fully report.
Initially, eight definite items of inquiry were agreed upon, and thereafter two pending applications were added, one relating to a bond of indemnity and the other to a release of certain funds.
The Referee held 17 hearings and filed an exhaustive report, consisting of 77 pages. Pleasing to the court was the consensus of opinion by all counsel regarding the impartial and conscientious manner in which the hearings were conducted. The report reflects and justifies counsels’ praise.
After extended oral arguments and consideration of the briefs submitted, I have reach the conclusion that the Referee’s report warrants confirmation in all respects except for the findings in connection with (1) nationalization, and (2) the plaintiffs’ standing as creditors.
Concerning the first exception, it appears that section 977-b was enacted by the Legislature of this State to protect domestic *46 creditors and stockholders from the confiscatory decrees of the Soviet Government, promulgated in the early days of the Communist revolution.
Prior to its enactment, a sizable body of case law had been developed in efforts to cope with Soviet decrees which sought to seize the assets of various Russian banks, insurance companies and other corporations. (See, e.g., Moscow Fire Ins. Co. v. Bank of New York & Trust Co., 280 N. Y. 286, 305; Russian Reinsurance Co. v. Stoddard, 240 N. Y. 149, 163; James & Co. v. Second Russian Ins. Co., 239 N. Y. 248, 256.)
Presently, we are confronted with the problems of Czech nationalization, just as once before we wrestled with the intricacies of Soviet Russian decrees. (See Augstein v. Banska A Hutni Akciova Spolecnost, 282 App. Div. 929; also the numerous cases of Bata v. Bata, 279 App. Div. 855; 279 App. Div. 1002; 304 N. Y. 644; also Bata, Nat. Corp. v. Anchor Mercantile Co., N. Y. L. J., Aug. 19, 1949, p. 293, col. 1, affd. 276 App. Div. 896.)
In a case similar to the one under review, Bata v. Bata A. S. & Svit Nat. Corp., Supreme Court, New York County, April 2,1953, Index 32473/48, Justice Greenberg held that the plaintiff had established her right to the appointment of a permanent receiver pursuant to the provisions of section 977-b, where assets of the defendant Bata A. S. had been appropriated by the Czechoslovak Government and later transferred to the Svit National Corp., a creature of the Czechoslovak State.
It is evident in the instant case that the defendant bank was taken over by the Czechoslovak Government and transformed into a national corporation by decree No. 102 of 1945. Defendant maintains in this connection, however, that its affairs have not been wound up nor is it in the process of liquidation, but article 2 of Law No. 31 of 1950 appears to be in direct contradiction of this view, since the Zivnostenska Banka “ shall end [its] activities * * * and shall cease to exist on a day to be determined by the Minister of Finance in a notice published in the collection of laws. ’ ’
On the other hand, there is testimony by a witness for the plaintiffs that the notice, just referred to, has not been published.
Defendant, conceivably, may still be in a position to meet its obligations to stockholders and creditors, but in the face of the facts now available, it should bear the burden of showing both its capacity and willingness to meet its responsibilities. At least, more information is essential as to current conditions.
Hence, the findings of the Referee are modified to the extent of ordering a trial of this issue at an early date, in accordance with subdivision 9 of section 977-b of the Civil Practice Act.
*47 Regarding the second exception, that relating to the plaintiffs ’ standing as creditors, as influenced by the International Monetary Fund Agreement, the Referee noted the membership of Czechoslovakia in the International Monetary Fund, and considered particularly that portion of article VIII (§ 2, subd. [b]), of the Fund Agreement: 1 ‘ Exchange contracts which involve the currency of any member and which are contrary to the exchange control regulations of that member maintained or imposed consistently with this Agreement shall be unenforceable in the territories of any member.” (60 U. S. Stat. 1411.)
He therefore concluded that the plaintiffs could not obtain relief in this court. (Perutz v. Bohemian Discount Bank in Liquidation, 304 N. Y. 533.)
However, he did state, and with mindful foresight, that this phase could be reopened if Czechoslovakia ever withdrew, voluntarily or otherwise, from the Fund organization. Such circumstance actually occurred on January 5, 1955, when the International Monetary Fund issued a release that Czechoslovakia was no longer a member.
No valid reason currently exists to frustrate our public policy, as expressed in the controlling statute, and thereby allow Czechoslovakia to take advantage of one of the privileges of Fund membership when it is no longer a member. (See Bernstein v. N. V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij, 210 F. 2d 375; Perutz v. Bohemian Discount Bank in Liquidation, 304 N. Y. 533, supra; Plesch v. Banque Rationale de la Republique d’Haiti, 273 App. Div. 224, affd. 298 N. Y. 573; Bollack v. Societe Generale Pour Favoriser le Developpement du Commerce et de L’Industrie en France, 263 App. Div. 601; Sulyok v. Penzintezeti Kozpont Budapest, 279 App. Div. 528; Stern v. Pesti Magyar Kereskedelmi Bank, 303 N. Y. 881; Freund v. Laenderbank Wien Aktiengesellschaft, 277 App. Div. 770; Sabl v. Laenderbank Wien Aktiengesellschaft, 30 N. Y. S. 2d 608.)
Accordingly, the present status of Czechoslovakia in relation to the International Monetary Fund does not bar the plaintiffs in this action.
The order fixing the Referee’s fee, which was agreed upon by counsel, is signed.
There is a dispute between the parties as to the liability for payment of the stenographer’s fees. Such fee shall be divided equally.
The receiver’s motion to examine the New York banks, which was held in abeyance pending the hearing and report of the Referee, is now denied, without prejudice, pending the trial.