207 So.2d 33 (1968)
CONFEDERATION LIFE ASSOCIATION, a Canadian Insurance Corporation, Appellant,
v.
Manuel Antonio VEGA Y ARMINAN, Appellee.
No. 67-695.
District Court of Appeal of Florida. Third District.
January 23, 1968.
On Rehearing February 27, 1968.
Shutts & Bowen and Cotton Howell, Miami, for appellant.
Helliwell, Melrose & DeWolf and Michael G. Martin, Miami, for appellee.
*34 Before PEARSON, HENDRY and SWANN, JJ.
HENDRY, Judge.
This case involves a claim in equity by a Cuban refugee against a Canadian insurance company for the cash surrender value of a policy of life insurance. The court below entered an order denying defendant's motion for summary judgment, granting summary judgment in favor of the plaintiff on the issue of liability only, and reserving jurisdiction to determine the exact amount of plaintiff's recovery, including any allowable attorney's fees. The defendant insurance company seeks review of the lower court's order by interlocutory appeal.
The material facts disclosed by the pleadings, together with the supporting affidavits, are not disputed. We quote from the chancellor's summary of those facts as contained in the order appealed:
"1. The Plaintiff is a resident of of Dade County, Florida, and is sui juris. The Defendant is a Canadian insurance corporation authorized to do business in Florida and doing business in Florida, with its principal place of business in Toronto, Canada.
"2. This court has jurisdiction of the subject matter and the parties hereto.
"3. On or about February 28, 1928, the Defendant, for a valuable consideration, executed and delivered to the Plaintiff its insurance policy No. 273630 in the City of Havana, Cuba, while the Plaintiff was a resident of Cuba. The Defendant agreed to insure the life of the Plaintiff for the sum of Five Thousand and No/100 ($5,000.00) Dollars and agreed that the value of the cash or surrender value of the policy after an interval of twenty (20) years had passed and would be a sum in the amount of Five Thousand, Eight Hundred, Twenty-five and No/100 ($5,825.00) Dollars if the Plaintiff made yearly payments from February 14, 1928, the date of issuance of the said policy, until February 14, 1947, making a total of twenty (20) yearly payments in the sum of Two Hundred, Forty-two and No/100 ($242.00) Dollars per payment. The Plaintiff duly paid all of the premiums required to be paid by the terms of the said policy of insurance, and the said policy is still in force and effect.
"4. All of the said premium payments were made in United States Dollars in Havana, Cuba.
"5. On or about July 1, 1951, the government of Cuba enacted and put into effect Decree No. 1384. Law No. 568 was enacted and became effective on or about October 2, 1959, in Cuba, and Law No. 930, was enacted and became effective in Cuba on or about February 23, 1961. The said laws and decrees are generally known as the Cuban Monetary Control Laws, and and have the effect of requiring that all obligations payable in Cuba be paid in Cuban pesos.
"6. On or about March 7, 1961, in the City of Miami, Florida, Plaintiff duly demanded of the Defendant payment of the said cash surrender value of the said policy, as of that date, according to to the schedule appearing on Page 2 of the said policy. The Defendant refused and still refuses to pay the said cash surrender value in any place other than in Havana, Cuba, and in any currency other than Cuban pesos.
"7. The plaintiff was a resident of Cuba on or about January 1959, when a violent revolution took place in Cuba by which the lawful government of Cuba was deposed and a revolutionary government seized power and has since that time maintained its power over Cuba as the de facto government. Because of the plaintiff's opposition to the revolutionary government, the plaintiff could no longer remain in Cuba without great fear for his life and safety, and the lives and *35 safety of his family and did, therefore, on or about September 2, 1960, depart from Cuba and take up residency in the United States of America in the City of Miami, Florida. Plaintiff is now a permanent resident of the State of Florida and was granted permanent immigrant registration No. A-12-447-101, on or about June 2, 1964, by the United States government. The Plaintiff is prevented from entering Cuba because of fear for his life or imprisonment at the hands of Cuba.
"8. Plaintiff proceeded, at law, on or about April 27, 1961, in an action against the Defendant on the said insurance policy No. 273630 in the Circuit Court in and for Dade County, Florida, at Law, No. 61L-1651, wherein a Final Order of Dismissal, without prejudice, was entered on January 14, 1965, by the Circuit Judge, leaving the Plaintiff without remedy in a Court of Law.
"9. The Defendant has, and still maintains, that it will pay to the Plaintiff the cash surrender value of the said policy, but only in Havana, Cuba, in Cuban pesos, and has refused to pay the said sum in the United States to the Plaintiff in United States dollars.
"10. The Plaintiff was required to, and did, employ the attorneys of record in this cause to institute suit on his behalf to recover the said sums and has thereby become obligated to pay his attorneys a reasonable attorney's fee for their services.
"11. The terms of the policy provide, inter alia, that:
(a) `all payments under this policy will be in legal tender of the United States of America',
(b) `all payments under this policy whether by the company or the insured shall be made in the City of Havana, Cuba; except that the insured may, with the consent of the company, make his payments elsewhere'."
To the foregoing summary we would add only a few of the remaining pertinent parts of the insurance policy taken from the English translation which appears in the record on appeal. The first of these policy parts is a paragraph entitled, "Residence, Travel and Occupation", which reads:
"No restriction obliges the insured under this policy regarding residence, travel or occupation, except those mentioned in the clauses covering total incapacity and double indemnity in case of accidents if these two clauses or any of them should be attached to this policy."
Secondly, a portion of another paragraph proclaims:
"This Contract Is Integral And Invariable
"* * * This contract may not be amended or modified in any way unless such amendment or modification should be verified by writing by one of the members of the executive personnel of the Company in the home office in Toronto, Canada, * * *"
Finally, a paragraph appears on the cover of the policy stating:
"Important Notice"
* * * * * *
"2. It is not necessary for the assured or the beneficiary of this policy to utilize any person, firm or corporation to collect this insurance or to obtain some of the benefits indicated by the policy. Write directly to the Confederation of Canada or communicate with the authorized agent of the Company which has his residence nearest the place where you are and who is obligated to attend and facilitate for you any arrangement without any expenses for you."
It should be stressed that the Confedation Life Association does not deny that it has a contractual obligation to the plaintiff. The essence of the insurer's defense *36 is that Cuban law, coupled with the terms of the policy, create an obligation of such a nature that it may be satisfied only by payment to the insured of Cuban pesos at Havana, Cuba.
In support of its defense, appellant contends that the issues presented in the cause sub judice are controlled by the leading Florida case of Confederation Life Association v. Ugalde[1] and the attendant line of cases.[2] We are of the opinion, however, that certain events materially affecting the applicable law have occurred since the Ugalde decision which necessitate a reexamination of this Court's position in such cases.
The lower court's jurisdiction over the person of the appellant is not contested,[3] nor is it disputed that the appellee may seek to enforce his contractual rights in the courts of this State.[4] The initial problem confronting the court, then, is to determine what law to apply.
The chancellor found that the contract of insurance in this case was entered into in Cuba, by and between a Cuban resident and a Canadian insurance company doing business in Cuba. Under the terms of the policy, payments were to be made in Havana. Thus, counsel for the appellant argues that the ancient maxim of lex loci contractus applies, and that the law of the place of the contract should govern, that law being Cuban law. There is substantial conflict of authority regarding the test to be used in determining what law to apply. Four separate tests are most generally recognized: (1) the "grouping of contracts" or "center of gravity" test; (2) the "intent of the parties" test; (3) the "place of the contract" test; and (4) the "place of performance" test.[5] While there exist no authority in Florida which specifically rejects other tests, it has been held that the lex loci contractus is preferable.[6] However this may be, we are unwilling to join appellant in its contention that the situs of the contract in this case is the Republic of Cuba.
Whereas the situs of the original insurance contract may have been Cuba, it neither logically nor necessarily follows that the situs of the completed cash surrender value option is the same. Generally, a contract is considered as having been entered into in that place in which the offer is accepted, or where the last act necessary to complete the contract is performed.[7] It is clear that under the terms of the insurance contract as it was written initially, there existed no fixed obligation on the part of the company to pay to the insured the cash surrender value of the policy.[8] In other words, there is no contract in regard to the cash surrender value. *37 Rather, the cash surrender value clause constitutes a continuing, irrevocable offer by the company, which offer matures into a contractual obligation only upon its being accepted by the insured.[9] The acceptance by the insured of the company's offer was also the last act necessary to complete the contract, and it was performed in Florida. Under the general rule, then, Cuba cannot be the situs of this contract.
However, appellant goes further in its contention. It is argued that, regardless of the lex loci contractus doctrine, Cuban law must be given extraterritorial effect in this case because of the International Monetary Fund Agreement.[10] We consider this to be the heart of the Ugalde decision.[11] The Florida Supreme Court in Ugalde held:
"The Cuban laws relating to the establishment of currency control are similar to those which have been enacted in this country with respect to our own currency and are not violative of United States policy. The Florida Courts are obligated by the International Monetary Fund Agreement to apply the cited Cuban laws to the contract here involved."[12]
Although it has been suggested that insurance contracts are not within the class of contracts intended to be governed by the Bretton Woods Agreement,[13] we are not concerned with that issue. The issue to be decided in this case is whether the decision in Ugalde is still binding in view of the subsequent withdrawal of the Republic of Cuba from the International Monetary Fund Agreement.[14]
We are of the opinion that the withdrawal of Cuba from the Fund Agreement creates a material distinction between the Ugalde case and the case here before us. Therefore, we hold that judgment in favor of the appellee is not precluded by Article VIII, Section 2(b), of the Bretton Woods Agreement. In support of this holding, we rely upon a similar decision in the United States Circuit Court of Appeals, Fifth Circuit,[15] wherein the opinion recites:
"When the Blanco case [Blanco v. Pan-American Life Insurance Co., D.C., 221 *38 F. Supp. 219] was before this Court on an interlocutory appeal it was urged by Pan-American that the rights of Blanco to payment in the United States became unenforceable by Cuban Law No. 858 requiring payments to Cuban nationals to be made in Cuba in pesos, and that this law is valid under the Bretton Woods International Fund Agreement. The effect, if any, of the Agreement was not decided on the former appeal. 311 F.2d 424, 427. Since the case was before us Cuba has withdrawn from the International Monetary Fund and is no longer a party to the Agreement. This being so, a judgment on the policies will not be precluded by the Agreement."[16]
It is settled that the laws of a nonmember nation are not given extraterritorial effect by the terms and conditions of the Bretton Woods Agreement.[17]
There remains for consideration appellant's contention that recovery should have been denied to the appellee because he failed to prove any breach of contract on the part of the insurer.
The foregoing contention would weigh heavily against appellee had he sought relief at law for breach of contract. But, the complaint in this cause was founded in equity. In finding for the appellee, the chancellor based his decision upon equitable principles, as is demonstrated by the order appealed which recites:
"* * * Equity seeks to do justice and avoid injustice, and is not bound by strict common-law rules. A court of equity is a court of conscience; it seeks to do justice in equity between all parties; it seeks to strike a balance of convenience as between litigants; and it looks at the whole situation. It does not act unless justice and good conscience demand that relief should be granted, and acts only in accordance with conscience and good faith. It is particularly well-known that equity seeks to prevent unjust enrichment, and will not permit one to be enriched unjustly at the expense of another."
* * * * * *
"As was pointed out in the case of Secombe v. Steele, supra,[18] equity regards substance rather than form. The maxim, or its substantial equivalent, that [equity] regards substance rather than form has been frequently stated and applied. Bruce's Juices v. King, 61 So.2d 175 (Fla. 1952) * * *."
* * * * * *
"In the instant case there is no doubt that the Plaintiff would have an absolute right to a meaningful recovery were it not for the revolution in Cuba. * * * [A]pplying the maxim that equity looks at the substance rather than the form of the transaction and since the primary purpose of this transaction is the payment of the cash surrender value of the policy after a period of twenty (20) years, and the provision of payment being made in Havana is merely for the convenience of the parties, there is no equitable reason why the plaintiff should not recover."
The record on appeal indicates that the appellee has adequately met his burden of showing the non-existence of any genuine issue of any material fact.[19] We are of the opinion, then, that the chancellor was correct in awarding judgment to the appellee as a matter of law.
We have examined appellant's other contentions and find them to be without merit. Accordingly, on the basis of the foregoing, we affirm.
Affirmed.

*39 On Rehearing.
A rehearing having been granted in the above named cause, and the case having been further considered upon the record and briefs and argument of attorneys for the respective parties, it is ordered and adjudged by the court that the opinion of this court filed January 23, 1968 in said cause be and the same is hereby reaffirmed and adhered to on rehearing.
NOTES
[1] Confederation Life Association v. Ugalde, Fla.App. 1963, 151 So.2d 315, cert. granted, Fla. 1964, 164 So.2d 1, cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964).
[2] Sun Life Assurance Company of Canada v. Klawans, Fla.App. 1964, 162 So.2d 702, cert. granted, Fla. 1964, 165 So.2d 166; Crown Life Insurance Company v. Calvo, Fla.App. 1963, 151 So.2d 687, cert. granted, Fla. 1964, 164 So.2d 813; Confederation Life Association v. Brandao, Fla.App. 1964, 173 So.2d 514, cert. denied, Fla. 1965, 173 So.2d 457; Trujillo v. Sun Life Assurance Company of Canada, Fla. App. 1964, 166 So.2d 473.
[3] Confederation of Canada Life Insurance Company v. Vega y Arminan, Fla.App. 1962, 135 So.2d 867, cert. denied, Fla. 1962, 144 So.2d 805.
[4] Sec. 4, Declaration of Rights, Florida Constitution, 25 F.S.A. See also, United States v. Wong Kim Ark (1898), 196 U.S. 649, at 695, 696, 18 S.Ct. 456, 42 L.Ed. 890.
[5] 17 C.J.S. Contracts §§ 12.2  12.5 (1963).
[6] Brown v. Case, 80 Fla. 703, 86 So. 684 (1920).
[7] 17A C.J.S. Contracts § 356 (1963).
[8] United States v. Penn Mut. Life Ins. Co., 130 F.2d 495 (3 Cir., 1942).
[9] Mercantile National Bank at Dallas v. Franklin Life Insurance Company, 248 F.2d 57 (5 Cir., 1957); United States v. Garland, 122 F.2d 118, 136 A.L.R. 918 (4 Cir., 1941), cert. denied, 314 U.S. 685, 62 S.Ct. 189, 86 L.Ed. 548 (1941); Fidelity Mut. Life Ins. Co. v. Merchants' and Mechanics' Bank, 71 F.2d 777 (5 Cir., 1934), cert. denied, 293 U.S. 593, 55 S.Ct. 109, 79 L.Ed. 687 (1934); Pacific States Life Ins. Co. v. Bryce, 67 F.2d 710, 91 A.L.R. 1446 (10 Cir., 1933); Lipman v. Equitable Life Assur. Soc. of the United States, 58 F.2d 15 (4 Cir., 1932); Varas v. Crown Life Insurance Company, 204 Pa.Super. 176, 203 A.2d 505 (1964); Gerber v. Equitable Life Assur. Soc. of United States, 1 Ill. App.2d 272, 117 N.E.2d 393 (1954); Langley v. New York Life Insurance Co., 273 S.W.2d 567 (Ky.App., 1954); Minning v. Prudential Ins. Co. of America, 88 Ohio App. 339, 95 N.E.2d 269 (1950); Pack v. Progressive Life Ins. Co., 239 Mo. App. 1, 187 S.W.2d 501 (1945); Mutual Life Ins. Co. v. Kaiser, 193 Miss. 581, 10 So.2d 766 (1942); Fowler v. State Life Ins. Co., 160 So. 139 (La. App., 1935); Lauer v. Michigan Life Ins. Co., 268 Mich. 614, 256 N.W. 567 (1934); 45 C.J.S. Insurance § 460 b (1963). See also, Confederation Life Association v. Ugalde, supra note 1, dissenting opinion, 151 So.2d 315 at 323; Magers v. National Life and Accident Insurance Company, 329 S.W.2d 752 (Mo. 1959).
[10] Dec. 27, 1945, 60 Stat. 1401, T.I.A.S. 1501. Also known as the Bretton Woods International Fund Agreement.
[11] Confederation Life Association v. Ugalde, supra Note 1.
[12] Id., 164 So.2d at 2.
[13] Paradise, Cuban Refugee Insureds and the Articles of Agreement of the International Monetary Fund, 18 U.Fla.L.Rev. 29 (1965).
[14] The Ugalde decision, supra note 1, was released on February 24, 1964. Cuba's withdrawal from the International Monetary Fund Agreement was effective April 2, 1964.
[15] Pan-American Life Insurance Company v. Blanco, 362 F.2d 167 (5 Cir., 1966).
[16] Id. at 170.
[17] Stephen v. Zivnostenska Banka National Corporation, 31 Misc.2d 45, 140 N.Y.S.2d 323 (Sup.Ct., 1955), aff'd, 286 App. Div. 999, 145 N.Y.S.2d 310 (1955).
[18] Secombe v. Steele, 61 U.S. (20 How.) 94, 15 L.Ed. 833 (1858).
[19] Visingardi v. Tirone, Fla. 1966, 193 So.2d 601; Holl v. Talcott, Fla. 1966, 191 So.2d 40.