Berta Concepcion GONZALEZ y CAMEJO

v.

**SUN LIFE ASSURANCE COMPANY
OF CANADA.**

Civ. No. 454–69.

United States District Court,
D. Puerto Rico.

April 23, 1970.

William J. Riefkohl, San Juan, P. R., for plaintiff.

Abelardo Ruiz Suria, for McConnell, Valdes, Kelley & Sifre, San Juan, P. R., for defendant.

## OPINION OF THE COURT

CANCIO, Chief Judge.

On July 1, 1969 plaintiff filed this action against defendant seeking judgment in the sum of Five Thousand U.S. Dollars plus interest and costs, upon a general allegation that she became entitled thereto in accordance with a contract of life insurance that was attached to the complaint as an exhibit. Defendant, Sun Life Assurance Company of Canada, answered the complaint denying certain allegations of the complaint and admitting others and setting forth certain affirmative defenses. On January 9, 1970 defendant filed a motion for judgment on the pleadings in reliance upon Federal Rule of Civil Procedure 12(h) (2) on the grounds that the plaintiff had failed to state a claim upon which relief could be granted.

Oral argument was held on defendant's motion for judgment on the pleadings and the parties submitted briefs in support of their respective contentions.

In passing upon the issues raised by the motion for judgment on the pleadings, the well-pleaded facts of plaintiff's complaint must be considered to be true. Stanton v. Larsh (CA 5th, 1957) 239 F.2d 104. The Court may also consider certain facts upon the basis of judicial notice. Huntt v. Government of Virgin Islands (CA 3rd, 1964) 339 F.2d 309.

We now set forth, bearing in mind the above, the facts we are considering as true upon making a disposition of defendant's motion for judgment on the pleadings. They are the following:

## STATEMENT OF FACTS

1. On March 11, 1954 defendant, Sun Life Assurance Company of Canada, a Canadian company duly authorized to do business in Cuba, issued in Havana, Cuba, at the request of Waldo Gonzalez Montes, a Cuban citizen and domiciliary, an insurance policy providing for the payment of five thousand "Pesos", Cuban National Currency, to plaintiff Berta de la Concepcion Gonzalez y Camejo, a Cuban citizen and domiciliary, and daughter of Waldo Gonzalez Montes, such payment to be made on a date fifteen years after the effective date of the policy or on prior death of the insured.

2. The total amount of the premiums on the aforesaid insurance policy were paid in Cuban "Pesos" in Havana, Cuba on the date the policy was issued by defendant. At the time of such payment the Cuban "Peso" was on a par with the United States dollar.

3. In August 1962 plaintiff departed from Cuba for Miami, Florida; after living there for one year she moved to San Juan, Puerto Rico where she now resides. This change of residence was motivated by the political disturbances in Cuba which followed the ascent to power of the government of Fidel Castro. Plaintiff could not remain in Cuba without endangering her life, and she fears returning to Cuba so long as the current Cuban government policies and outlook remain.

4. The insurance policy by its terms provides that all sums due or surrendered by virtue thereof will be payable in the offices of defendant in Havana in the National Currency of Cuba.

5. The insurance policy, an endowment policy, matured in 1968, as per its terms.

6. Plaintiff has demanded the payment of the endowment value of said policy as of the date it became due, and defendant has asserted its right to pay, in accordance with the terms of the policy, in Havana, Cuba and in Cuban currency.

7. Defendant offered to pay plaintiff a certain sum in United States Dollars in Puerto Rico as a compromise of plaintiff's claim.

8. Cuba withdrew from the International Monetary Fund Agreement on April 2, 1964.

## ISSUES IN CONTROVERSY

The parties have raised and fully discussed the following issues:

1. Law applicable, whether Cuban or Puerto Rican Law.

2. Applicability or not of the doctrine of unjust enrichment.

3. Weight and consideration, if any, to be given to defendant's offer of compromise and settlement of plaintiff's claim.

## DISCUSSION

■■ The subject matter jurisdiction of this Court, based upon diversity of citizenship, has not been disputed. (48 U.S.C. 863). Under these circumstances, the Court must sit as a local court with respect to a determination of the relevant legal principles. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This means, *inter alia,* that the Court must utilize and follow the conflict of laws rule prevailing in this jurisdiction as established by the Supreme Court of Puerto Rico. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941);

"We are of opinion that the prohibition declared in Erie R. Co. v. Tompkins * * * against * * * independent determinations by the federal courts extends to the field of conflict of laws. The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." (313 U.S. at 496, 61 S.Ct. at 1021)

■ Hence, we must determine the conflict of laws rule now prevailing in the Commonwealth of Puerto Rico, as adopted by the Supreme Court of the Commonwealth for actions of this sort. This issue was exhaustively reviewed by the Puerto Rico Supreme Court in Maryland Casualty Co. v. San Juan Racing Ass'n, 83 P.R.R. 538 (1961). The principal issue in that case was a determination of the law to be applied upon construing a contract of insurance. The Supreme Court adopted the so-called "points of contact test", according to which the law of the state having the most contacts with the contract of insurance governs any determination of the rights of the parties. Maryland Casualty Co. v. San Juan Racing Ass'n, supra, at page 544. Cf. Vda. de Fornaris v. American Surety Co. of N. Y., 93 P.R.R. 28 (1966), for a restatement of the doctrine as applied to a case.

■ Upon applying the conflict of laws rule so established by the Supreme Court of Puerto Rico, we conclude that unquestionably it is the law of Cuba that must be applied in the interpretation of the contract on which plaintiff has based her complaint. The following language by the Superior Court of New Jersey in a similar situation is of interest:

"Whichever the theory that may be applied as determinative—the place of the making of the contract, the place of performance of the contract, the intent of the parties, or the grouping of contacts or center of gravity—all point to Cuba as the sole jurisdiction concerned with this policy of insurance. From the moment it became effective throughout its entire life and up to the moment that it matured by reason of the death of the insured, every contact, significant or otherwise, with this insurance contract took place within Cuba. Moreover, there can be no question but that the insured and the three beneficiaries designated by him (all citizens and residents of Cuba * *.) clearly intended that the contract would be performed in Cuba. And performed in Cuba it surely would have been had not plaintiffs decided to leave

Cuba permanently. In these circumstances the law of Cuba should control the rights of the parties to this litigation with reference to the policy of insurance." Present v. U. S. Life Ins. Co., 96 N.J.Super. 285, 297, 232 A.2d 863, 869 (1967), unanimously, aff'd Supreme Court of New Jersey, 51 N.J. 407 (1968).

In this particular case, our task is simplified because it is uncontested that Cuban law, both by virtue of certain special legislation *and* of its Civil Code, requires that payments under contracts such as the insurance policy contract involved in this case be made in accordance with the terms thereof. In the instant case, this means payment in Cuban "Pesos" and in Havana, Cuba.

In 1948 Cuba created the National Bank of Cuba by its law No. 13, of December 23, 1948 which provided, *inter alia*, that the currency of the United States of America would cease to be legal tender in Cuba one year after the date on which the National Bank of Cuba commenced operations, unless the period of its validity should be expressly extended by the President of Cuba. By means of Decree No. 1384 of 1951, the President of Cuba extended the period of validity until June 30, 1951, after which date American currency ceased being legal tender in Cuba. Law No. 568 of 1959 of Cuba expressly provides that it shall be a felony of monetary contraband to settle policies outside of the Republic without securing the express consent of the Currency Stabilization Fund. See generally Present v. U. S. Life Ins. Co., 96 N.J. Super. 285, 290–291, 232 A.2d 863, 864–866 (1967).

Hence, this Cuban legislation clearly requires that payment by the defendant be made in "Pesos", the Cuban legal tender currency, and in Havana, subject to criminal fines and penalties for failure to do so.

It is particularly interesting to note that this result would have necessarily followed even before the enactment of the several laws referred to above, for Cuba's Civil Code, by virtue of its common origin with that of Puerto Rico, contains provisions identical to Articles 1124 and 1125 of the Civil Code of Puerto Rico. (31 L.P.R.A. §§ 3174, 3175). These Articles provide, as is discussed below, that a contractual obligation which specifies the currency in which it is to be discharged and the place of payment is to be enforced in accordance with the terms of the obligation. Plaintiff's complaint does not allege a refusal by defendant to comply with the law of Cuba; in fact, the defendant has represented in open court that it stands ready to meet its contractual obligations upon demand.

Plaintiff has advanced the argument that the withdrawal of Cuba from the International Monetary Fund Agreement means that payment must be made by the insurance company in United States dollars in the United States, and not in Cuban "Pesos" in Cuba. We find no substance to this contention. In this case, neither Cuba's participation in the International Monetary Fund Agreement nor its subsequent withdrawal therefrom affect in any way the application of the conflict of laws rule adopted by the Supreme Court of Puerto Rico. Maryland Casualty Co. v. S. J. Racing Ass'n, *supra*; cf. Pan America Life Ins. Co. v. Blanco, 362 F.2d 167 (5th Cir., 1966). As noted above, such rules are binding on this Court sitting in diversity. Erie R. Co. v. Tompkins and Klaxon v. Stentor, *supra*.

Plaintiff has invoked Confederation Life Ass'n v. Vega Y. Arminan, Fla. App., 207 So.2d 33, 37 (1968) to support its contention that the law of Cuba should not apply to the situation. Even were we to consider the reasoning of *Vega* to be compelling, however, the case is clearly distinguishable as we shall see immediately.

*Vega* concerned a cash surrender value option, exercised while the plaintiff (in the Vega case) was in Florida, while the present proceeding is an attempt to recover a certain sum of money on a matured endowment policy. The obligation

to pay this amount in Cuban "Pesos" at the offices of defendant in Havana became final and binding as of the date all premiums were paid, which took place in Havana, Cuba. Moreover, in Florida, as is evident by the decision in *Vega* (207 So.2d at 36–37), a "situs of the contract" test prevails to determine the law that should be applied. The Supreme Court of Puerto Rico expressly rejected this rule in favor of the "points of contact" rule. *Maryland Casualty Co., supra.*

■ Upon the basis of the foregoing, this Court concludes that it is the law of Cuba that must be applied to determine the rights of the parties under the contract on which plaintiff has based her action. It is therefore clear that defendant is only obligated to pay the insurance amount to plaintiff in Cuban "Pesos" and in Havana, Cuba, in accordance with the very terms of the contract sued on. Plaintiff has failed to allege or imply that defendant has failed or refused to comply with the contract. Under the circumstances, the complaint fails to state a claim upon which relief can be granted.

The basis of our decision, therefore, is that Cuban law applies to the situation and that according to it judgment should be entered in favor of defendant, as requested. In the interest of presenting a full discussion of the issues, however, and in light of the ample discussion of this point by the parties, the Court will note that the same result would be obtained were we to apply the law of Puerto Rico.

Plaintiff seeks to recover a certain amount of money based on an insurance contract which provides that all amounts due under it are payable at the Company's office in Havana, in Cuban "Pesos". The Puerto Rico Civil Code provides, in what is pertinent, as follows:

"Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Civil Code, 1930, Art. 1044 (31 L.P. R.A. § 2994).

In addition to Article 1044 of the Civil Code, which requires that contractual obligations be fulfilled in accordance with their stipulations, the Code contains two further provisions that are of particular relevance here:

"Payments of debts of money shall be made in the specie stipulated and, should it not be possible to deliver the specie, in legal silver or gold coin current in Puerto Rico. * * * "

Article 1124 (31 L.P.R.A. § 3174)

"Payments shall be made at the place designated in the obligation. * * * "

Article 1125 (31 L.P.R.A. § 3175)

The defendant, a Canadian company, has carried on business in Cuba since the turn of the century and continues to do so. It has the means to comply with payment of the insurance amount in accordance with the terms of the insurance contract, that is, in Cuban "Pesos" and in Havana.

■ We do not think the so-called doctrine of unjust enrichment compels a different result. We decide this case on the basis of applicable law and the terms of the contract. If plaintiff had to leave Cuba this certainly was not the fault of defendant. If she had stayed she would have been paid the insurance amount as per the contract terms. Her voluntary departure from Cuba should not in any way dictate a unilateral change in the contract, nor insulate her from whatever fluctuations there might be in the Cuban "Peso". The fact that we may have jurisdiction of her action does not mean that we are authorized to vary the clear terms of the insurance contract. Sternberg v. West Coast Life Ins. Co., 196 Cal.App.2d 519, 16 Cal.Rptr. 546 (1961) (Tobriner, J.). Indeed, it would offend against the principles of equity for a court to order changes in contractual language at the request of one party, wholly to the detriment of the other, when the latter stands ready to meet the obligations of the agreement.

■ The offer made by defendant to pay plaintiff a certain sum in U. S. Dol-

lars in Puerto Rico in settlement of her claim does not contain any implications as to the issue of ultimate liability. It can only be taken as an effort to dispose of a litigation but never as an admission as to the soundness of a plaintiff's claim. People v. Ruiz, 83 P.R.R. 337, 342 (1961); Jones, the Law of Evidence, Sec. 390 (5th ed., Gard ed.).

We have also given consideration to the decision of the First Circuit Court of Appeals in Pujol v. United States Life Insurance Company, 396 F.2d 430 (1968). However, we find this decision of no assistance to the controversy here in dispute as it dealt with a question of jurisdiction not present in this case.

The foregoing would indicate that the complaint and answer filed in this case clearly show that plaintiff has failed to state a claim upon which relief can be granted. Hence, we must grant defendant's motion for judgment on the pleadings. Judgment shall be entered accordingly.